# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**VIRGINIA S. DEBORD**                                   **CIVIL ACTION**

**VERSUS**                                                       **NO. 16-358-JWD-RLB**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER**
**OF THE SOCIAL SECURITY**
**ADMINISTRATION**

## NOTICE

  Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

  Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 26, 2017.

            **RICHARD L. BOURGEOIS, JR.**
            **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **VIRGINIA S. DEBORD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-358-JWD-RLB** |
| **CAROLYN W. COLVIN,** **ACTING COMMISSIONER** **OF THE SOCIAL SECURITY** **ADMINISTRATION** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Virginia S. Debord (Plaintiff) seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1; Tr. 12-31), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on May 11, 2012 alleging that she became disabled on April 2, 2010 because of bipolar/major depression, neck pain, and anxiety. (Tr. 15; Tr. 199). Plaintiff's application was eventually denied by an Administrative

Law Judge ("ALJ"), who first held an administrative hearing (Tr. 32-67) before issuing an unfavorable decision on December 18, 2014. (Tr. 12-31).  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 4, 2016. (Tr. 1-5).  The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is

2

less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the

claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.    Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2014.

2.    Plaintiff had not engaged in substantial gainful activity since April 2, 2010.

3.    Plaintiff suffered from the following severe impairments: anxiety disorder and affective disorder.

4.    Plaintiff did not meet or medically equal any listed impairment.

5.    Plaintiff retained the residual functional capacity (RFC) to perform light work. In addition, she is further limited to: never climbing ladders, ropes or scaffolds, and only occasionally climbing ramps and stairs; occasional balancing, stopping, crouching, kneeling, and crawling; no work with moving, hazardous, and dangerous machinery; no work at unprotected heights; no commercial driving; limited to unskilled work and simple repetitive tasks; no work that requires strict production quotas or fast-paced work; only occasional and superficial contact with public; and only occasional and superficial interaction with supervisors and coworkers.

6.    Plaintiff could no longer perform her past relevant work as a food services director, waitress, restaurant manager, and activities recreational aide.

7.    Plaintiff was considered a younger individual as of the alleged disability onset date.

8.    Plaintiff had at least a high school education and was able to communicate in English.

4

9.      The transferability of job skills is not material to the ultimate determination.

10.     Considering Plaintiff's age, education, work experience, and RFC, there existed a significant number of jobs in the national economy that Plaintiff could perform.

## IV.   DISCUSSION

### A.     Consideration of Medical Opinion Evidence

As her first assignment of error, Plaintiff argues that the ALJ failed to accord the opinions of treating psychologist Dr. Gilliland with the appropriate weight in its consideration, only providing "minimal weight" to his opinions. (R. Doc. 10-2 at 18); (Tr. 25; 778-83).

In her decision, the ALJ discussed the entire relevant medical record, including those findings made by treating, examining and non-examining physicians. (Tr. 19-25). As for the opinion evidence, the ALJ gave "significant weight" to the opinion of the consultative examiner after "comparing the claimant's testimony to the objective medical evidence." (Tr. 25). "[M]inimal weight" was given to Dr. Gilliland's opinion based upon the ALJ's finding that the treatment was of a relatively short duration and Dr. Gilliland's admission that he "merely recounted the claimant's reports of symptoms, duration and severity." (Tr. 25). As Plaintiff points out, 20 C.F.R. § 404.1527(c) provides guidance as to how the ALJ weighs medical opinions, listing the following considerations: (1) examining relationship; (2) treatment relationship, including (a) length of the treatment relationship and frequency; (b) nature and extent of the treatment relationship; (c) supportability; (d) consistency; (e) specialization; and (f) other factors. *See also Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

The ALJ began her discussion of Dr. Gilliland's opinion only after thoroughly recounting the facts and history of treating physicians for the several years prior to Dr. Gilliland's treatment. (Tr. 19-25). The ALJ then noted that Dr. Gilliland "admitted that he only examined the claimant

3 times over a relatively brief period" and that he "admitted that he merely recounted the claimant's reports of symptoms, duration and severity." (Tr. 25). In addition, the ALJ noted that it was unclear whether Plaintiff received any actual treatment from Dr. Gilliland, and further noted the inconsistences between Plaintiff's own testimony regarding panic attacks with the absence of any mention of panic attacks in Dr. Gilliland's opinion. (Tr. 25). Accordingly, based upon the duration of the relationship, the express admissions of Dr. Gilliland, and the inconsistencies between Plaintiff's testimony and Dr. Gilliland's opinion, the ALJ concluded that Dr. Gilliland's opinion "does not merit the same weight that would be given to a treating physician with a treating relationship of a longer duration." (Tr. 25). Although the ALJ did not specifically list the factors, or how her analysis related to each of those factors, it is apparent that the ALJ's assessment of Dr. Gilliland considered all of these factors, and there is substantial evidence to support her conclusion.

Even were the Court to conclude that the ALJ did not address the *Newton* factors, the law does not require the ALJ to do so when "there is competing first-hand medical evidence…" *Walker v. Barnhart*, 158 Fed. App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). When the record contains medical evidence from multiple treating sources, the ALJ is "not required to go through all six steps in *Newton*" because "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 Fed. App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 Fed. App'x at 534).

Plaintiff claims that the ALJ's decision was in error "by adopting the opinions from non-examining consultants over those from a treating specialist." (R. Doc. 10-2 at 18). Plaintiff's assessment is not entirely accurate, however. The ALJ gave "significant weight" to the opinion

of the consultative examiner because the ALJ concluded the opinion of the consultative examiner was in line with the objective medical evidence as well as the Plaintiff's testimony. (Tr. 25). The CE concluded, based on review of the VA records, that Plaintiff had moderate difficulties in maintaining social function, and maintaining concentration, persistence or pace, and mild restriction of activities of daily living. (Tr. 90).

Indeed, the VA records support this finding, providing substantial evidence for the ALJ's conclusion. Plaintiff was diagnosed on June 15, 2010 with Bipolar I Disorder, panic attacks without agoraphobia, and polysubstance dependence. (Tr. 268). On March 16, 2011, Dr. Freese confirmed Plaintiff's diagnosis of Bipolar I Disorder, and Panic Disorder without Agoraphobia. (Tr. 273). Despite these diagnoses, Dr. Freese responds that there is not a "total occupational and social impairment due to mental disorder signs and symptoms," nor did "mental disorder signs and symptoms result in deficiencies" in judgment, thinking, family relations, word, mood or school," but that there was "reduced reliability and productivity due to mental disorder symptoms." (Tr. 276).

In the most recent VA records, from February 26, 2015 show that Plaintiff reported "doing well with meds." (Tr. 1006). January 21, 2015 records state that Plaintiff reported being depressed as her mother had passed away just two days prior, but that Plaintiff was "pleasant, cooperative, good eye contact," "[a]dequate hygiene and grooming," and "alert and oriented," among others. (Tr. 1022). VA Records from May 30, 2014, Dr. Craig Maumus noted that Plaintiff was depressed, but also noted that she had a supportive family, had hope for the future, and did not report being angry, revengeful, helpless, or hopeless. (Tr. 936). Noticeably absent from the VA records is any notation of Plaintiff's inability to work or inability to function

appropriately from day-to-day. Further, on several occasions, the records reflect that Plaintiff has reported being stable or doing better while on medication. (Tr. 274, 460, 543, 545).

The ALJ gave "minimal weight" to Dr. Gilliland's opinion because of her finding that his opinion was based on a short treatment duration, his failure to record Plaintiff's primary complaint of panic attacks anywhere in his opinion, as well as the lack of clarity as to the basis of his opinion, i.e., whether it derived solely or primarily from Plaintiff's reports (Tr. 25). Substantial evidence supports the ALJ's finding. Dr. Gilliland saw Plaintiff only three times over a five-month period; namely, May 23, 2013, July 16, 2013, and October 24, 2013. (Tr. 778). The ALJ is correct in concluding this to be a "relatively brief period." (Tr. 25). It is also noted that Plaintiff's relationship with Dr. Gilliland began after Plaintiff had filed for benefits.[1] Dr. Gilliland diagnoses Plaintiff with an Axis I of Bipolar Disorder II, PTSD, and gambling disorder, but also records that "Patient's Bipolar Disorder is so severe *as per her report* that she has lost jobs due to manic and depressive symptoms." (Tr. 780) (emphasis added). It is unclear from the record whether Dr. Gilliland's assessment is based on Plaintiff's self-reporting or independent diagnoses.

Additional evidence in the record further provides substantial evidence for the ALJ's decision to accord Dr. Gilliland's opinion with only minimal weight. To start, the ALJ asked Plaintiff why she would "have to leave those jobs or were you terminated or what happened?" (Tr. 41). Plaintiff responded with, "Panic attacks. I was terminated for my personality. I was terminated for panic attacks; that I was too quiet; that, just different reasons." (Tr. 41). The

---

[1] Dr. Gilliland writes his letter "at the request of the veteran… as it relates to her application for Social Security Disability benefits." (Tr. 783). Dr. Gilliland does not qualify as a treating source as "[t]he SSA 'will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.' *Richardson ex rel. C.R. v. Barnhart*, 338 F. Supp. 2d 749, 759 (S.D. Tex. 2004) (citing 20 C.F.R. § 416.902). For that reason, to the extent, if any, that the ALJ did not consider the *Newton* factors, the Court notes that such an analysis is not required because Dr. Gilliland is not a treating source.

objective medical records of Dr. Gilliland, however, make absolutely no mention of panic

attacks, Plaintiff's primary complaint.  Plaintiff testifies as to panic attacks, anxiety, depression

and mania, migraines, and neck pains, but also testifies that she has visited her and her husband's

parents (Tr. 49) with some difficulty; went to casinos and gambled excessively during the same

time period as her apparently debilitating panic attacks (Tr. 54-55); went to Wal-Mart and the

laundry facility (Tr. 55); cooked (Tr. 56); cleaned (Tr. 56).  The symptoms and severity reported

by Dr. Gilliland are, by Dr. Gilliland's own admission, based upon Plaintiff's reporting.  In his

Medical Source Statement, although Dr. Gilliland posits that his opinion is based on Plaintiff's

"case history, self-report of symptoms, and presentation in session," the symptoms and severity

that he enumerates in the following paragraph is based only on Plaintiff's reports. (Tr. 783).  For

each of the symptoms and descriptions of length and severity, Dr. Gilliland states Plaintiff "has

reported" or "has explained" or "consistently related." (Tr. 783).  Lastly, the record contains no

actual written record of the three meetings Plaintiff had with Dr. Gilliland from May through

October of 2013.  Instead, the evidence in the record from Dr. Gilliland is limited to a checkbox-

type Mental Impairment Questionnaire (Tr. 778-782), and a Medical Source Statement written

for purposes of Plaintiff's application for disability (Tr. 783).

 The ALJ instead gave the opinion of the consultative examiner significant weight based

on her comparison of Plaintiff's testimony with the objective medical evidence. (Tr. 25).  This

finding is consistent with the jurisprudence in that an ALJ has discretion to afford the opinion of

a treating physician less weight where that opinion is not consistent with other evidence in the

record. *See, e.g., Wilson v. Colvin*, 2014 WL 4230003, at *4 (N.D. Tex. Aug. 25, 2014) (citing

*Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("It is well established that an ALJ may

grant less weight to a treating physician's opinion when that opinion conflicts with other

substantial medical evidence contained within the record.").  In giving the consultative examiner significant weight based upon objective medical evidence, the ALJ notes that "the records of the VA clinic reveal sporadic treatment sought by claimant for control of these disorders, which improved with daily medication compliance and regular mental health care assessments," and that "[t]he evidence indicates that the claimant engaged in a cycle of improvement in symptoms and subsequent non-compliance with medication regimen when she felt better." (Tr. 24).

The ALJ further noted that, although Plaintiff described herself as 100% disabled, she was able to care for her personal needs, prepare meals, do chores, drive, go out alone, shop for food, clothing and medications, watch TV and read, and go to the casino, which findings were inconsistent with the conclusions of Dr. Gilliland but consistent with those of the consultative examiner. (Tr. 24-25).  In her Function Report (Tr. 216-223) dated July 16, 2012, Plaintiff indicated the she makes her husband lunch and dinner, and takes care of her cat(s) (Tr. 217); prepares meals daily, cleans the house, and does laundry (Tr. 218); drives a car, goes shopping in store for food, clothes, and medicine (Tr. 219); and she dresses, bathes, and takes medicine but "at times" has to be reminded for these tasks (Tr. 218).  Further, she notes that her conditions affect completing tasks and getting along with others, but does not check any of the other boxes, which include lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, concentration, understanding, following instructions, and using hands. (Tr. 221).

The VA records are consistent with the opinion of the consultative examiner as well as Plaintiff's testimony.  Accordingly, there is substantial evidence in the record to support the ALJ's conclusion, and the ALJ was within her discretion to afford minimal weight to Dr. Gilliland's opinion.  The ALJ reviewed competing first-hand evidence, and substantial evidence

is in the record to support the conclusions drawn by the ALJ.  Thus, the ALJ's decision will not be reversed on this ground.

### B.    Consideration of VA Determination

Plaintiff next argues that the ALJ failed to adequately consider the VA disability determination. (R. Doc. 10-2 at 22-23).  In support of her argument, Plaintiff suggests that the ALJ did not "discuss evidence that Ms. Debord was granted individual unemployability benefits by the VA, finding her unable to work effective May 1, 2010, for bipolar disorder with panic disorder, personality disorder and severe depression, in addition to kidney stones." (R. Doc. 10-2 at 22); (Tr. 183-85).  Plaintiff argues that, under *Chambliss v. Massanari*, 269 F.3d 520 (5th Cir. 2001), the VA disability determination is entitled to great weight.  (R. Doc. 10-2 at 22).  Conversely, the Commissioner argues that the VA disability determination is not dispositive because "the criteria applied by the two agencies vary" pursuant to *Underwood v. Bowen*, 828 F.2d 1081 (5th Cir. 1987) (citing 20 C.F.R. § 404.1504). (R. Doc. 12 at 12).

The ALJ's decision notes the VA determined Plaintiff was "70% service connected disabled for major depressive disorder" in May 2014 (Tr. 23), and further confirms that she had carefully considered "all the evidence" when she concluded that Plaintiff "has not been under a disability within the meaning of the Social Security Act from April 2, 2010 through the date of this decision." (Tr. 15).  Additionally, the VA Disability Rating is specifically referenced in the List of Exhibits. (Tr. 29).  The Court further notes that the VA Rating Decision cited by Plaintiffs is dated September 5, 2013 (Tr. 183-85) and is not clear as to the percentage of disability attributed to mental impairment, while the VA Notes referenced by the ALJ in her decision (Tr. 934) reference a VA disability of "70% SC [service-connected] for MDD [major depressive disorder]." (Tr. 23).  Further, the ALJ discussed the VA medical records in detail. (Tr. 23-24).

11

Generally, a disability rating by the Department of Veterans Affairs (VA) is "not legally binding on the Commissioner," because the two agencies use different criteria to determine disability.[2] *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *see also* 20 C.F.R. § 404.1504 ("a determination made by another agency that you are disabled or blind is not binding on" the SSA); SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006) (disability determinations of other agencies are not binding because "final responsibility for deciding… whether you are disabled, is reserved to the Commissioner").  Nonetheless, a VA rating is still entitled to a "certain amount" of weight and must be considered by the ALJ. *Chambliss*, 269 F.3d at 522; *see also Loza v. Apfel*, 219 F.3d 378, 394-95 (5th Cir. 2000) (100% VA disability rating not binding but entitled to "great weight" and could not be disregarded); SSR 06-03P, 2006 WL 2329939, at *6 ("cannot be ignored and must be considered").  The appropriate weight "will vary depending upon the factual circumstances of each case." *Chambliss*, 269 F.3d at 522.

Deference and weight entitled to a VA disability determination does not mean that an ALJ is required to follow the VA's findings.  "An ALJ may ultimately disagree with the findings of the VA if the findings and the underlying evidence are considered." *Welch v. Barnhart*, 337 F. Supp. 2d 929, 935 (S.D. Tex. 2004).  In that situation, "there is no reversible error as long as the record reflects consideration of those findings." *Id.*; *see also Moody v. Astrue*, No. 10-230, 2012 WL 1019590, at *5 (N.D. Tex. March 9, 2012) (no "bright-line rule" exists, but decision must at least "show meaningful consideration of the VA disability determination and provide specific reasons" for giving it less weight).

---

[2] The Department of Veterans Affairs (VA) and the SSA are both federal agencies that administer disability programs to provide benefits to disabled individuals. *See* 38 C.F.R. § 4.1 (VA's "Essentials of evaluative rating"); 20 C.F.R. § 404. 1520(a)(4)(i)-(v) (SSA's "Evaluation of disability in general").

The caselaw has found meaningful consideration of a VA disability determination where the ALJ discusses the VA records underlying the disability determination, even though the ALJ does not provide the specific reasons for declining to concur in the VA's disability determination. In *Tillison v. Berryhill*, 2017 WL 2438827, at *3 (W.D. Tex. June 1, 2017), for example, the court states the following:

> The VA's actual "disability" determination is not what is significant to the ALJ; rather it is the reasoning and medical records that support the VA's finding…. By examining the medical records that supported the VA's finding and substantively addressing the underlying conditions that formed the basis of the VA disability rating, the ALJ effectively explained why the VA disability rating was given diminished weight.

First, the *Chambliss* court holds that "[a] VA rating of *total and permanent disability* is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss*, 269 F.3d at 522 (emphasis added). The case of *McCaa v. Astrue*, 2010 WL 1533287 (M.D. La. Apr. 14, 2010), also concerns a 100% disability rating by the VA. We are not here faced with a VA rating of total and permanent disability. At most, the VA rated Plaintiff 90% disabled, but the records are also conflicting in that several instances note a 70% disability rating. For example, two separate records, both last updated on August 11, 2014, conflict. *See* Tr. 898 (90%), *cf.* Tr. 934 (70%). Two places in the record note an "unemployability" determination, but reflect different disability ratings. *See* Tr. 934 (70%), *cf.* Tr. 194 (90%).

"[A] VA finding of 'individual unemployability,' is not entitled to deference because, as discussed, the criteria applied by the VA and the SSA in making disability determinations is different. Further, 'individual unemployability' is a non-medical opinion 'based upon vocational, rather than medical factors.'" *Correa Cortes v. Colvin*, 2016 WL 7228774, at *7 (W.D. Tex.

13

Dec. 12, 2016).  *See also Smith v. Colvin*, 2015 WL 5541217, at *8 (S.D. Miss. Sept. 17, 2015) ("Here, the ALJ independently reviewed all of the evidence relied on by the VA and determined that this evidence only 'somewhat supported' the VA's rating decision.").

The Court is cognizant of the fact that, at most, Plaintiff was rated 90% disabled, but deemed unemployable by the VA.[3]  Further, the ALJ's extensive discussion of the VA records is procedurally sufficient insofar as any requirement to delineate specific reasons for not following a VA disability determination is concerned.  Here, the ALJ discussed both the VA medical records and the 70% VA disability determination. (Tr. 23-24).  In fact, the vast majority of the records discussed by the ALJ in her RFC are from the VA records, essentially devoting four pages of her decision to the VA records. (Tr. 20-24).  This reflects sufficient consideration of the VA records underlying its disability determination such that there is substantial evidence supporting the ALJ's decision with regard to the VA disability determination.

Even were the ALJ's decision to be found defective with regard to the VA's disability determination, such an error would be harmless thereby not warranting reversal or remand.  By way of example, in the case of *Branton v. Astrue*, 2012 WL 4813833, at *4 (N.D. Tex. Apr. 27, 2012), the court found that the ALJ had erred in failing to consider the rationale for the VA's rating decision, but that the error was harmless because the plaintiff's substantial rights had not been affected "insofar as the VA's Rating Decision relied on medical diagnoses that were well documented in the record before the ALJ."  The same would be true here even were the Court to find error in the ALJ's decision.  "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*,

---

[3] There is at least one reference to a 70% disability rating. (Tr. 934).  Additionally, in March 2011, Dr. Jeffrey Fahs records a 50% service connected disability rating due to removal of uterus and ovaries, which impairment is not even before the Court. (Tr. 385).  Thus, it is unclear as to what the actual disability rating is, but suffice it to say, it is not 100%.

837 F.2d 1362, 1364 (5th Cir. 1988). The ALJ's substantial review and analysis of the VA records provides sufficient basis for the ALJ's decision not to follow the VA's disability rating.

### C.      Credibility

Plaintiff's third argument is that the ALJ erred in her credibility determination of the Plaintiff. (R. Doc. 10-2 at 23-24). Plaintiff's argument is essentially that, given the Plaintiff's testimony coupled with the objective medical records, the ALJ should have sided with the Plaintiff where her testimony contradicted that of the medical records. The ALJ concluded that the Plaintiff's testimony was not in line with the objective medical records and, therefore, the Plaintiff's testimony was not to be accorded substantial weight, stating that the Plaintiff's allegations and subjective symptoms were "not fully credible." (Tr. 25).

On judicial appeal, the Court does not "re-weigh the evidence" or conduct a *de novo* review of the ALJ's credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 n. 18 (5th Cir. 1994). Because the ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing, his or her credibility assessment is generally entitled to great deference. *See Ins. Co. of State of Pennsylvania v. Dir., Office of Workers' Comp. Programs*, 713 F.3d 779, 783 (5th Cir. 2013) (citing *Ceres Gulf, Inc. v. Dir. OWCP*, 683 F.3d 225, 228 (5th Cir. 2012) ("As the factfinder, the ALJ is exclusively entitled to assess the weight of the evidence and credibility of witnesses.").

In assessing credibility, the ALJ must consider the entire record, including medical signs and laboratory findings and statements by the claimant and his or her treating or examining sources concerning the alleged symptoms and their effects. 20 C.F.R. § 404.1529(c)(1). Additionally, the regulations provide a non-exclusive list of factors that the ALJ must consider. *See* 20 C.F.R. § 404.1529(c) (2011).[4] Nevertheless, the Fifth Circuit has held that the ALJ is not

---

[4] These factors include:

required to follow "formalistic rules" in assessing credibility, and the ALJ must articulate his or

her reasons for rejecting a claimant's subjective complaints only "when the evidence clearly

favors the claimant." *Falco*, 27 F.3d at 163.

      The Court finds there was substantial evidence to support the ALJ's finding with regard

to credibility.   Plaintiff testified that her panic attacks started in 2005 but have increasingly

gotten worse. (Tr. 42).  She further testifies that her panic attacks are triggered by people,

crowds, and stress. (Tr. 43).  She states that she has never had any inpatient stays but that her

husband has wanted to take her. (Tr. 44).  Plaintiff testifies that she does not drive; not because

of anxiety or panic attacks, but in order to prevent herself from gambling. (Tr. 45).  The attorney

also questions Plaintiff with regard to her diagnosis of Bipolar Disorder.  She claims to spend

360 days of a year in bed as a result of not having the will to get up, but reports going to the

doctor and leaving the house to do laundry. (Tr. 47, 48).  She further suggests that she goes to

see her husband's parents or her mom in Las Vegas and that the stress of those trips have caused

hallucinations. (Tr. 49).

      The medical records repeatedly confirm the reports of panic attacks, as well as the

diagnosis of Panic Disorder, but do not support Plaintiff's allegations of the severity of this

condition, thereby providing substantial evidence compromising Plaintiff's credibility.  Nowhere

---

(i)       Your daily activities;
(ii)      The location, duration, frequency, and intensity of your pain or other symptoms;
(iii)     Precipitating and aggravating factors;
(iv)     The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)      Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)     Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

in the records does a medical source suggest hospitalization as a result of her mental condition(s), nor do the records reflect any complaint of hallucinations.  At a visit with Dr. Jeffery Fahs on March 17, 2011, Plaintiff reported that her medication regiment kept her from being manic, but that she stayed depressed, and described felling emotionally flattened and anergic with some sleep disturbances. (Tr. 386).  Despite these reports, Dr. Fahs' examination concludes that she was "pleasant, cooperative, and quite easily engaged," "fully oriented," and she demonstrated "a normal and fluid range of expressed affect" with "no evidence dysphoria or irritability." (Tr. 390).  Dr. Fahs' Impression was that her "current psychiatric medication regimen seems to be reasonable," with the recommendation of adding bupropion to help improve depression. (Tr. 390).

In a telephone consultation on May 17, 2013 where Plaintiff was noted to be "responsive to questions and polite, she reported "that she has had good response with topiramate in the past without noticeable side effects." (Tr. 677).  At an April 30, 2013 visit, Plaintiff reported panic attacks two times a week, while it is also noted that she was "alert and oriented," had "good eye contact and [was] cooperative," with euthymic mood and congruent affects, and stated, "I'll be OK." (Tr. 682).  On May 24, 2012, the provider assessed that Plaintiff was "Stable on current medication regimen." (Tr. 712).

Also, Plaintiff testifies that when she is on Klonopin, she "can at least venture out." (Tr. 52). Regarding the Klonopin, she also relays that "It's a tremendous asset because it calms – whether it be the nervousness, I'm not sure. It doesn't take away all of the panic attack but it makes it to where I can spend 10 minutes at Walmart." (Tr. 53). In the past month before her testimony, she had gone out twice, cooked twice in the last week, and cleaned her residence. (Tr. 56).

In short, Plaintiff's specific complaints are repeatedly reported and confirmed, but their severity is not.  As to the Plaintiff's allegations, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the allege symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the medical evidence for the reasons explained in this decision." (Tr. 24).  The ALJ goes on to conclude, after weighing all of the medical opinions in the record and recounting Plaintiff's testimony in conjunction with the objective medical records, that she "agrees with the State agency and gives their opinion significant weight." (Tr. 25).  In doing so, the ALJ recorded numerous inconsistencies between Plaintiff's testimony and the medical records.  For example, the ALJ finds that "[w]hile the claimant alleges diminishment in functioning due to bipolar disorder, major depression and anxiety, she continues to be able to engage in activities that are in stark contrast with her allegations of functional limitations." (Tr. 24).  The ALJ additionally opines that, "[m]ost telling is the claimant's ability to go to the casino to gamble 3-4 days a week, all while alleging severe, debilitating panic attacks in the presence of small and large crowds." (Tr. 24).

The ALJ acknowledged that the Plaintiff "does have impairments that could limit her activities." (Tr. 24).  Nonetheless, she found that the "clinical findings demonstrating these impairments fail to disclose any organic abnormality capable of precluding the claimant from all work activities." (Tr. 24).  As noted by the ALJ in making these determinations, she "considered and weighed all medical opinions of record in this case." (Tr. 25).  20 C.F.R. § 416.929, on the issue of consideration of symptoms in determining whether a claimant is disabled, provides the following:

In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities (or if you are a child, your functioning), we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 416.929(a).

The ALJ indicated that she "finds that claimant's allegations and subjective symptoms are not fully credible" and "[a]fter comparing the claimant's testimony to the objective medical evidence," she concluded that she "agrees with the State agency and gives their opinion significant weight." (Tr. 25). *See Beck v. Barnhart*, 205 Fed. App'x 207, 213 (5th Cir. 2006) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) ("According to the ALJ, her testimony at the administrative hearing conflicted significantly with these diagnoses. It is the role of the ALJ, not this court, to resolve such evidentiary conflicts."). The ALJ, like the ALJ in the *Beck* decision, considered the symptoms as described by the claimant pursuant to 20 C.F.R. § 416.929(c)(3), as well as the "extent to which [the claimant's] symptoms can reasonably accepted as consistent with the objective medical evidence and other evidence. The ALJ considered Plaintiff's testimony and allegations in connection with the objective medical evidence, which were inconsistent with each other, and concluded that, while the impairments could cause the symptoms, Plaintiff's suggestions of the effect of the symptoms was not credible. The Court finds that the ALJ was within her discretion in making this assessment and there was substantial evidence to so find.

Plaintiff also argues that "[t]he fact that Ms. Debord has periods of non-compliance also fails to equate with a finding that she is not credible." (R. Doc. 10-2 at 24). The Court disagrees, however, finding that the ALJ did not cite periods of non-compliance in support of her conclusion that Plaintiff is not credible. To the contrary, the ALJ cites periods of non-compliance in order to show that, with periods of compliance, the Plaintiff was "stable on medication." (Tr. 21). This is supported by substantial evidence in the record. (Tr. (Tr. 274, 460, 543, 545, 715).

Using the available medical evidence, the ALJ determined that Plaintiff's impairments were not of a disabling nature such that Plaintiff "retains the residual functional capacity to perform work at the light exertional level." (Tr. 25). The ALJ's credibility determination is further supported by substantial evidence. The ALJ did not fail to make the necessary credibility choices and she indicated the basis for those choices in resolving the crucial subsidiary fact of the truthfulness and impact of Plaintiff's allegations and testimony.

### D.    Consideration of New Evidence

Plaintiff's final argument is that the Appeals Council failed to properly consider new evidence such that the action should be remanded to the ALJ for consideration of same. (R. Doc. 10-2 at 26-28). More specifically, Plaintiff argues that she provided new evidence from Dr. Scuddy F. Fontenelle, III that was not before the ALJ, and suggests that it is material in nature "as it addresses Ms. Debord's mental functioning since April 2, 2010." (R. Doc. 10-2 at 27).

In the Notice of Appeals Council Action, the Appeals Council states, "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed order of Appeals Counsel." (Tr. 2, 5). The Appeals Council then goes on to enumerate the four "additional" records it considered in denying review. Namely, the Appeals Council references

records from the VA Health Center dated December 13, 2010-March 2, 2015 (Tr. 1005-1208); the November 14, 2015 VA Notice (Tr. 1209-1210); the Psychology Report of Dr. Fontenelle (Tr. 1211-1216); and the Mental Impairment Questionnaire of Dr. Fontenelle (Tr. 1217-1221).[5] All four of these records were made part of the record by the Appeals Council (Tr. 2; Tr. 1005-1221) before denying Plaintiff's request for review and must therefore be considered by the Court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

To the extent Plaintiff is claiming that the Appeals Council erred in not evaluating the newly submitted evidence that post-dated the ALJ decision, that argument is legally deficient. The Appeals counsel need only "specifically state[] it had considered the additional evidence and found it did not warrant changing the ALJ's disability decision." *Cantrell v. McMahon*, 227 Fed. App'x 321, 323 (5th Cir. 2007). *See also LeDoux v. Colvin*, 2015 WL 5636414, at *5 (M.D. La. Aug. 31, 2015) ("nothing in the Act or regulations requires that the Appeals Council provide a discussion of the newly submitted evidence or explain its rationale for denying review"); *Whitehead v. Colvin*, 2015 WL 4772311, at *4 (M.D. La. Aug. 12, 2015) (same); *Jones v. Astrue*, 2015 WL 1346244, at *7-8 (M.D. La. Mar. 23, 2015) (same); *Savoie v. Colvin*, 2015 WL 1004217, at *4 (M.D. La. Mar. 5, 2015) (same); *Woodridge v. Colvin*, 2016 WL 4253971, at *6 (M.D. La. July 14, 2016) (same); *Jones v. Colvin*, 2016 WL 4009823, at *4 (M.D. La. July 25, 2016) (same).

---

[5] Both the VA Notice (Tr. 1209-1210) and the majority of the VA Health Center Records (Tr. 1046-1208) pre-date the ALJ's December 18, 2014 decision, and Plaintiff provides no explanation as to why these records were apparently not before the ALJ. However, the Request for and Authorization to Release Medical Records or Health Information submitted by Plaintiff to the VA for purposes of a "Disability Assessment" is dated March 10, 2014. (Tr. 1061). Presumably, the reason they were not previously provided is due to a delay on the part of the VA, but this is not clear from the record.

1.      __Dr. Fontenelle's Psychological Report and Mental Health Impairment__
        __Questionnaire__

The Psychological Report and Mental Health Impairment Questionnaire completed by

Dr. Fontenelle reflects that he saw Plaintiff one time, on February 2, 2016. (Tr. 1211; Tr. 1217).

He concludes that Plaintiff "would likely struggle maintaining job placement and work related

duty over 40 hour work week due to her significant depression, and Panic Attacks." (Tr. 1216).

The Court does not accept Plaintiff's suggestion that this new evidence casts doubt on the ALJ's

decision.  Rather, the new evidence from Dr. Fontenelle (Tr. 1211-1221) also provides

substantial evidence in support of the ALJ's finding.  Dr. Fontenelle examined Plaintiff one time

upon referral by Plaintiff's counsel after Plaintiff had received an unfavorable decision from the

ALJ.  For the same reasons the ALJ afforded little weight to Dr. Gilliland's opinion, little weight

would be afforded to Dr. Fontenelle's opinion.

To the extent Plaintiff argues the newly submitted evidence is "significant" enough to

cast doubt on the existence of substantial evidence, the Court disagrees.  First, the only exam

notes of Dr. Fontenelle are dated February 2, 2016. (Tr. 1211-1221). Based on the treating

relationship supported by the record, Dr. Fontenelle does not qualify as a "treating source"

entitled to deference, despite Plaintiff's characterization. *See Clayborne v. Astrue*, 260 Fed.

App'x 735, 737 (5th Cir. 2008) (doctor properly rejected as treating source where "isolated

visits" did not amount to an "ongoing treatment relationship" with doctor); *Hernandez v.*

*Heckler*, 704 F.2d 857, 860–61 (5th Cir. 1983) (doctor who only saw claimant twice in a 17–

month period was not a treating physician).  20 C.F.R. § 404.1527 defines "treating source" as

"your own acceptable medical source who provides you, or has provided you, with medical

treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."

Dr. Fontenelle's single assessment of Plaintiff clearly falls outside of this definition.  In defining

"treating source," 20 C.F.R. § 404.1527 also notes that "[w]e will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."  The fact that Dr. Fontenelle's opinion is based upon a one-time assessment of Plaintiff post-dates the ALJ's negative decision, and further specifically notes referral by Plaintiff's representative in her claim, supports the conclusion that Dr. Fontenelle's opinion is not entitled the weight or deference of a treating source, and would not alter the ALJ's finding.

Thus, as the Court finds that the Appeals Council did review and consider Dr. Fontenelle's opinion, and the Court's own review of Dr. Fontenelle's opinion does not reveal any justification for overturning the ALJ's decision or the review denial of the Appeals Council, Plaintiff's appeal on this ground is denied.

### 2.    VA Health Center Records and VA Notice

To the extent Plaintiff argues that the VA records should have been considered, the Court notes that the majority of those records pre-date the ALJ's December 18, 2014 decision.  The VA Health Center records span the time period of December 13, 2010 through March 2, 2015. (Tr. 1005-1208).  The post-ALJ decision VA records do not reflect any development that is out of line or substantially different than what was considered by the ALJ.  Based upon those records, on or about December 22, 2014, Plaintiff presented at the ER of Gibson General Hospital in Princeton, Indiana wherein the Clinical Impression was identified as "Anxiety" and she was sent home in stable condition. (Tr. 1048-1053).  The remainder of the post-ALJ decision VA records are notes from visits or communications with VA doctors or staff.  On December 24, 2014, records reflect that a nurse attempted to contact Plaintiff to establish care at the VA facility in

Princeton, Indiana. (Tr. 1044). On January 6, 2015, a social worker was able to get in contact with Plaintiff and she was scheduled for an intake appointment on January 9, 2015. (Tr. 1043). On January 9, 2015, Plaintiff was seen by Nurse Jennifer Rust and Dr. Hydeh Rahimian. (Tr. 1028-1042). These records detail Plaintiff's medical history, medications, and summarize a physical exam. Related to her mental health, the January 9, 2015 VA records acknowledge a prior diagnosis of Bipolar I and panic with agoraphobia (Tr. 1034); a positive screen for depression (Tr. 1038); a suggestion of severe depression (Tr. 1038-39); and a negative screen for PTSD (Tr. 1040).

Perhaps most significantly is that Dr. Rahimian referred Plaintiff for a mental health examination within 24 hours. (Tr. 1035). There is no record that Plaintiff participated in a psychiatry consult until January 20, 2015. (Tr. 1018-1024). Dr. DMello evaluated Plaintiff for 50-60 minutes on January 20, 2015. (Tr. 1018). Dr. DMello summarizes Plaintiff's medical and social histories and her medications before concluding with diagnoses of Bipolar Disorder II, currently depressed, some symptoms of PTSD, and "service-connected for major depressive disorder." (Tr. 1022). Dr. DMello did not alter any of Plaintiff's medications and advised Plaintiff to call the VA clinic if she had any questions or worsening symptoms. (Tr. 1023). Dr. DMello's findings are essentially the same as what was before the ALJ such that this evidence would not alter the ALJ's conclusion.

Then, between February 5, 2015 and March 2, 2015, the VA records indicate numerous attempts to contact Plaintiff to follow up regarding her address, and her non-VA scheduled appointments. (Tr. 1005-Tr. 1010). Within that timeframe, the VA records note that Plaintiff reported she was "doing well." (Tr. 1006).

In sum, nothing in the post-ALJ decision VA records indicates any significant development beyond what was reviewed and considered by the ALJ, nor is any explanation provided for the production of the VA Health Center records *after* the ALJ decision. Further, the Appeals Council specifically reports having reviewed and considered the additional evidence, including the VA Health Center Records. (Tr. 2).

Accordingly, as the Court finds that the Appeals Council did in fact review and consider the VA Health Center records and VA Notice in its review denial, and the Court's own review of the VA Health Center records and VA Notice does not reveal any justification for overturning the ALJ's decision or the review denial of the Appeals Council, Plaintiff's appeal on this ground is denied.

## V.     CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on June 26, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

25